**UNITED STATES of America, Appellee,**

v.

**Leonard S. DINO, Appellant.**

**No. 89–2140EM.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1990.

Decided Nov. 14, 1990.

Arthur S. Margulis, St. Louis, Mo., for appellant.

James K. Steitz, St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and Wollman, Circuit Judge.

ARNOLD, Circuit Judge.

This appeal involves the criminal conviction of a St. Louis pharmacist for purchasing sample prescription drugs and selling the samples to customers. The defendant, Leonard S. Dino, admits purchasing samples from drug-company representatives from 1977 until 1986. Dino also admits using these samples to fill prescriptions ultimately purchased by his customers. Dino claims, however, that this was not an illegal practice until 1988, when Congress specifically outlawed purchasing and trading in sample drugs. Indeed, because no statute specifically barred the sale of drug samples for the years in question, the indictment charged Dino with mail fraud, conspiracy to defraud, and misbranding and adulteration of prescription drugs. Dino maintains that he is not guilty of these crimes. For reasons explained below, we affirm the judgment entered by the District Court.[1]

On September 3, 1986, law-enforcement agents executed a search warrant at Council Plaza Pharmacy in St. Louis, one of two pharmacies owned by the defendant. The agents seized various documents and containers of drugs as evidence in an ongoing investigation of the activities of certain drug salesmen. A seven-count criminal indictment followed, naming Dino and a for-

---

1. The case was tried before the Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

mer manager at Council Plaza, Joseph Greco. At Dino's trial, government witnesses included Dick Meyer, a former sales representative of Ross Laboratories, and Jerry Hayes, a sales representative of Wyeth Laboratories. Both testified that they sold sample drugs to the defendant, in violation of their company's rules. The samples were sometimes delivered to Dino out of their original containers, with the "sample" marking removed by a razor or with rubbing alcohol. The salesmen also testified that the samples sold to Dino often lacked the drugs' lot numbers, serial numbers, and expiration dates.

Other government witnesses included former employees of the defendant. They testified about, among other things, Dino's purchases of Tussi cough syrup samples from Bob Haller, a sales representative of Carter–Wallace, Inc. Some of the defendant's employees had seen samples of the cough syrup poured from their original bottles into larger containers. The jugs used to store the cough syrup did not bear lot numbers or expiration dates. The defendant, in turn, presented witnesses who claimed that selling sample drugs was a wide-spread practice in the pharmacy business until 1988. That was when Congress passed an amendment to the Federal Food, Drug, and Cosmetic Act of 1970 prohibiting the sale of drug samples. 21 U.S.C. § 333(b).

At the conclusion of the trial, the jury returned verdicts of guilty on five counts: using the mails to defraud drug manufacturers and drug customers, and to obtain money and property by fraud, in violation of 18 U.S.C. §§ 2 and 1341 (Counts I, II, and V); receiving and delivering adulterated and misbranded drugs, in violation of 21 U.S.C. §§ 331(c) and 333(b) (Count VII); and conspiracy to commit these offenses, in violation of 18 U.S.C. § 371 (Count VI). Dino was fined $10,000 on each of Counts I and II, and was sentenced to concurrent terms of twelve months' imprisonment, with 90 days to be served on work release and the remaining nine months suspended. The District Court suspended the imposition of sentence for

Counts V, VI, and VII, and placed Dino on probation for five years.

On appeal, Dino argues that his actions were not fraud under the mail-fraud statute. Dino claims that the government failed to prove that he had a specific intent to defraud drug manufacturers or customers, or to obtain money or property by fraud. State rules and regulations did not prohibit the practice during the years in question, Dino continues, and he stopped trading in samples in 1986 when it was brought to his attention that buying and selling samples might be wrong.

■ We review the evidence presented to the jury in the light most favorable to the government. *United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir.1986). The jury heard that Dino had purchased samples from several different drug representatives, over a period of years, at considerably less than the price charged for the drugs by the manufacturers. A reasonable jury could readily understand that selling "sample" drugs to consumers deprives the drug manufacturer of the profit it would get if its products were acquired through the intended channels. Furthermore, customers did not know they were buying drugs not meant for resale. Because at least some of the drugs Dino sold had an unknown expiration date, and no lot or serial number with which to effect a recall, if necessary, customers were denied basic safeguards which drug companies take some pains to provide. We think this is fraudulent misrepresentation for profit. (Although the defendant claims he kept this information in his computer, Dick Meyer testified that he gave Dino samples in plastic baggies and vials not bearing expiration dates or serial or lot numbers. Tr. 1:36.) Thus, we conclude that the government sufficiently proved a scheme "to defraud, or for obtaining money or property by means of false or fraudulent ... representations...." 18 U.S.C. § 1341.

■ Dino also claims that the government presented insufficient evidence to prove use of the mails in furtherance of the scheme. We disagree. Dick Meyer testified that two checks in payment for sam-

ples were mailed to his home. Tr. 1:38–39. Kathleen Sharkey testified that a notation on a purchase order of samples, which read, "Send check after merchandise is checked in," was in Dino's handwriting. Tr. 1:79. This evidence was offered to prove use of the mails in Count I. Meyer identified another exhibit, offered to prove a mailing for Count II, which was a check together with a piece of paper bearing the notation, "Julie, send check," and included Meyer's name and address. Tr. 1:40. Evidence offered to prove a mailing for Count V was an envelope postmarked April 7, 1986, found at Council Plaza Pharmacy. The envelope contained a receipt totalling the pharmacy's sample drug order from Bob Haller. Tr. 2:90–91. We think all of this evidence is more than sufficient to prove use of the mails within the meaning of 18 U.S.C. § 1341.

■ Dino's third claim on appeal is that the government offered insufficient evidence to prove that he received misbranded and adulterated drugs with intent to defraud or mislead, prohibited by 21 U.S.C. §§ 331(c), 333(b). A drug is "misbranded" if, among other things, its labeling is "false or misleading in any particular," or if its labeling lacks "adequate warnings ... against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users...." 21 U.S.C. § 352(a), (f). We agree that marketing of sample drugs is not *per se* misbranding. See *United States v. Various Articles of Drugs*, 332 F.2d 286, 287–88 (3d Cir.1964). However, the government proved that Dino received bags of samples not marked with lot numbers, serial numbers, or expiration dates. Tr. 1:36, 2:8–9. While the statute does not specifically state that a drug in a container without this information is "misbranded," we think the language "false or misleading in any particular" includes drugs received without lot numbers or expiration dates. This is because doctors, patients, and drug manufacturers all rely on pharmacists to

sell safe and effective drugs—not drugs impossible to trace for a recall, or which may have surpassed an expiration date. Based on the evidence, the jury was entitled to find that Dino could not have kept track of the expiration dates and lot numbers on the samples he bought.

■ The question of adulteration is easier. 21 U.S.C. § 351(a)(2)(B) defines adulteration to include packaging a drug not in conformity with "current good manufacturing practice" to assure that the drug meets specified safety standards. The government presented the testimony of Dr. Ken Blessel, Director of Quality Control for Carter–Wallace. Dr. Blessel testified that the jugs Dino used to store samples of Tussi cough syrup were intended only for short-term contact, unlike the specially designed original containers. Tr. 2:26. He noted that these jugs appeared to have collapsed inward during the period before trial. Tr. 2:28. Dr. Blessel doubted the purity of the Tussi stored in the jugs because the material used to construct the jugs may have leaked into the product and caused its adulteration. Tr. 2:28–29. Thus, we think the government sufficiently proved a violation of 21 U.S.C. § 351.

Dino's challenge to his conviction for conspiracy (Count VI) raises no new issues. He merely repeats his challenges to the substantive underlying offenses, and we accordingly decline further comment.

■ Dino's last claim is that the District Court should have suppressed evidence seized from a storage area located near his pharmacy because the search warrant did not include the address of that building. The Magistrate [2] found that Dino consented to the search. Dino argues that he assumed the warrant was valid for the other building because the agent said so. We disagree that he is therefore entitled to have the evidence found there suppressed. Dino was shown the warrant. Dino's consent to the search of the other building

---

2. The Honorable William S. Bahn, United States Magistrate for the Eastern District of Missouri. The District Court adopted the Magistrate's Report and Recommendation. No. 88–112 CR (5) (E.D.Mo. November 23, 1988).

does not become involuntary because the agent did not inform him he could refuse.

The judgment entered by the District Court is affirmed.