IN THE
TENTH COURT OF APPEALS
 

No. 10-00-084-CR

Â Â Â Â Â JONATHAN DANIEL RUSHING,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 1999-579-C
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
CONCURRING OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â The majority concludes that the separation-of-powers doctrine has been violated because the
legislature has impermissibly interfered with our ability to review a trial courtâs jurisdiction. The
majority seems to recognize that the legislature can preclude us from having jurisdiction to review
certain types of cases, but refuses to allow the legislature the latitude to impose certain restrictions
that must be complied with before we can review an issue on direct appeal.
Â Â Â Â Â Â I have no problem in recognizing that the legislature has the authority under the constitution
to set certain procedural hurdles that must be overcome before a particular issue may be reviewed
by us on direct appeal. If the legislature chooses to require a certain type of preservation for
jurisdictional issues at the trial court level in criminal cases before we have jurisdiction for
appellate review, that is within their province. 
Â Â Â Â Â Â In this particular case, it means that if Rushing wants to challenge the trial courtâs jurisdiction,
it must be done by some other procedure, presumably an application for writ of habeas corpus,
not by direct appeal. This makes a lot of sense in this context. If the trial court had refused to
order the record supplemented with the records of the juvenile proceeding, we would be unable
to determine if the trial courtâs jurisdiction had been properly invoked as it pertains to a juvenile. 
But if challenged by application for writ of habeas corpus, an appropriate record could be made,
showing that the juvenile court had in fact relinquished exclusive jurisdiction and that the case had
properly proceeded to trial on the indictment in the criminal district court.
Â Â Â Â Â Â I would recognize that the legislature may limit the procedural manner in which an issue must
be presented for us to have jurisdiction to review it, even if it involves the trial courtâs
jurisdiction. Because the majority holds otherwise, I respectfully note my disagreement with that
portion of the opinion. Because the majority reaches the same result by concluding that the record
supports the fact that the juvenile court waived jurisdiction and that it was accepted by the criminal
district court, I concur in the result.
Â Â Â Â Â Â One further note. As I view it, the holding of the majority is very narrow. The only issue
is whether the legislature may prevent us from reviewing a challenge to a trial courtâs jurisdiction
by imposing a preservation requirement. The holding should be strictly limited to these facts.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Concurring opinion delivered and filed July 11, 2001
Publish



alled their
special exceptions to the courts attention at the hearing on the plea to the
jurisdiction, the court responded, ÂI donÂt have a hearing on Special Exceptions
set.Â  I just want to hear the Plea to the Jurisdiction and the responses to
that.ÂÂ  But the order granting the CityÂs plea to the jurisdiction reads in
pertinent part:

came on to be considered the City of
BurlesonÂs Plea to the Jurisdiction, together with its Brief Supporting City of
BurlesonÂs Plea to the Jurisdiction (including an Appendix); PlaintiffÂs
Special Exceptions and Response to City of BurlesonÂs Plea to the
Jurisdiction and to Brief Supporting CityÂs Plea; PlaintiffsÂ Supplemental
Response to Defendant BurlesonÂs Plea to the Jurisdiction; and City of
BurlesonÂs Objections to PlaintiffsÂ Response; and arguments of counsel.Â  Having
considered such matters, the Court has determined that the Plea to the
Jurisdiction is well founded and should be granted.

Â 

(emphases added).

Â Â Â Â Â Â Â Â Â Â Â  Rule of Appellate Procedure
33.1 recognizes that issues may be preserved either by express or implicit
rulings.Â  See Tex. R. App. P. 33.1(a)(2)(A).Â 
In the summary-judgment context, this Court has consistently held that the grant
of a summary-judgment motion, standing alone, does not constitute an implicit
ruling on objections to the movantÂs summary-judgment proof.Â  See, e.g.,
Allen ex rel. B.A. v. Albin, 97 S.W.3d 655, 663 (Tex. App.ÂWaco 2002, no
pet.).Â  The Schronks contend that a different rule applies for special
exceptions.Â  See, e.g., Fieldtech Avionics & Instruments, Inc. v.
Component Control.Com, Inc., 262 S.W.3d 813, 824 n.3 (Tex. App.ÂFort Worth
2008, no pet.) (Âa trial court implicitly overrules special exceptions when it
grants summary judgment on the motion to which the special exceptions
pertainÂ).Â  However, we need not decide in this case whether a different rule
applies.

Â Â Â Â Â Â Â Â Â Â Â  The Schronks called their
special exceptions to the trial courtÂs attention at the hearing on the plea to
the jurisdiction.Â  The court stated on the record that it did not want to
consider the special exceptions, but stated in its written order that it did
consider them.Â  See In re Marriage of Jordan, 264 S.W.3d 850, 855 (Tex. App.ÂWaco 2008, no pet.) (written order controls over oral rulings).Â  Thus, the court
considered the SchronksÂ challenges to the adequacy of the CityÂs plea to the
jurisdiction and implicitly overruled their challenges by ruling on the merits
of the CityÂs pleading.Â  See Clement v. City of Plano, 26 S.W.3d 544,
550 n.5 (Tex. App.ÂDallas 2000, no pet.) (by granting summary judgment, trial
court implicitly overruled special exceptions which were ÂpresentedÂ to court),
disapproved on other grounds by Telthorster v. Tennell, 92 S.W.3d 457,
464 (Tex. 2002).

Type(s) of Immunity Alleged

Â Â Â Â Â Â Â Â Â Â Â  ÂThe purpose of a special
exception is to compel clarification of pleadings when the pleadings are not
clear or sufficiently specific.ÂÂ  Baylor Univ. v. Sonnichsen, 221
S.W.3d 632, 635 (Tex. 2007) (per curiam).Â  Pleadings must give Âfair noticeÂ of
a partyÂs claims or defenses.Â  Horizon/CMS Heathcare Corp. v. Auld, 34
S.W.3d 887, 896-97 (Tex. 2000); Schwartz v. Ins. Co. of the State of Pa., 274 S.W.3d 270, 276 (Tex. App.ÂHouston [1st Dist.] 2008, pet. denied).Â  The test
long-recognized by intermediate appellate courts[1]
in Texas is Âwhether an opposing attorney of reasonable competence, perusing
the pleadings, can ascertain the nature and the basic issues of the controversy
and the testimony probably relevant.ÂÂ  2 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice Â§ 7:4[b] (2d ed. 2002); see Schwartz, 274
S.W.3d at 276; Schley v. Structural Metals, Inc., 595 S.W.2d 572, 587
(Tex. Civ. App.ÂWaco 1979, writ refÂd n.r.e.); Daniels v. Conrad, 331
S.W.2d 411, 415 (Tex. Civ. App.ÂDallas 1959, writ refÂd n.r.e.).

Â Â Â Â Â Â Â Â Â Â Â  The Schronks first argue
that the CityÂs plea to the jurisdiction does not give fair notice of whether
the City was asserting immunity from suit or immunity from liability.Â  It is
true that the CityÂs pleading only uses the term Âsovereign immunityÂ and does
not specify whether immunity from suit or immunity from liability is claimed.

Â Â Â Â Â Â Â Â Â Â Â  The Schronks cite Baylor College of Medicine v. Hernandez, 208 S.W.3d 4 (Tex. App.ÂHouston [14th Dist.] 2006, pet. denied), for the proposition that, because the City
explicitly claimed immunity as an affirmative defense and never used the term
Âimmunity from suitÂ in its pleading, the CityÂs plea to the jurisdiction does
not allege immunity from suit.Â  In Baylor College of Medicine, however, the
plaintiff did not challenge the defendantsÂ pleadings by special exceptions,
and the defendants/appellants did not claim immunity from suit in their
appellate pleadings.Â  See id. at 9 n.5.Â  Thus, the court made it clear
that immunity from suit was not an issue in that case.

Â Â Â Â Â Â Â Â Â Â Â  As the text of appellantsÂ
motions and briefs make clear, Baylor and the Physicians interpret section
312.006 of the Health and Safety Code to confer immunity from liability on each
of them and base their claims of immunity on this section and on the alleged
lack of notice.Â  Although appellantsÂ motion to dismiss also contains the
conclusory statement that Baylor and the Physicians are immune from both
liability and suit pursuant to ÂTex.
Health & Safety Code Section 312 et seq., Tex. Civ. Prac. & Rem.Code Section
101 et seq., and Tex. Educ. Code
Section 61 et seq.,Â the appellants repeatedly state that section
312.006(a) confers immunity from liability and present neither argument nor
authority supporting their claim that any specific section of the
globally-cited codes renders them immune from suit.Â  To the extent that such an
issue has been raised, it is waived pursuant to Tex. R. App. P. 33.1(a)(1)(A) and 38.1(h).

Â 

Id.

Â Â Â Â Â Â Â Â Â Â Â  Here, the City unequivocally
claims immunity from suit on appeal, so we will examine the CityÂs trial
pleadings to determine whether immunity from suit was adequately pleaded in the
court below.

Â Â Â Â Â Â Â Â Â Â Â  Sovereign or governmental
immunity[2]
consists of immunity from suit and immunity from liability.Â  Reata Constr.
Corp. v. City of Dallas, 197 S.W.3d 371, 374 (Tex. 2006).Â  Immunity from
suit Âbars a suit unless the state has consented,Â while immunity from
liability Âprotects the state [or a political subdivision] from judgments even
if it has consented to the suit.ÂÂ  Id.Â  Â[I]mmunity from suit deprives a
trial court of subject-matter jurisdiction.ÂÂ  Id.Â  By contrast, immunity
from liability is an affirmative defense which must be pleaded or it is
waived.Â  Tex. DepÂt of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999); City of Weslaco v. Borne, 210 S.W.3d 782, 789-90 (Tex. App.ÂCorpus
Christi 2006, pet. denied).Â  ÂImmunity from liability does not affect a courtÂs
jurisdiction to hear a case.ÂÂ  Jones, 8 S.W.3d at 638; accord Borne,
210 S.W.3d at 789.

Â Â Â Â Â Â Â Â Â Â Â  First, we observe that the
City filed a three-part defensive pleading.Â  In the first part, the City
generally denied the SchronksÂ allegations.Â  In the second, the City asserted
the Âaffirmative defenseÂ of Âsovereign immunity.ÂÂ  See Jones, 8 S.W.3d at
638; Borne, 210 S.W.3d at 789-90.Â  The City entitled the third part a Âplea
to the jurisdiction.Â[3]
Â Paragraph 3.02 states, ÂBecause the CityÂs sovereign immunity has not been
waived, PlaintiffÂs claims are barred.Â  Therefore, this Court does not have jurisdiction
as to the City.ÂÂ  From this allegation, Âan opposing attorney of reasonable
competenceÂ would understand that the City was claiming immunity from suit in the
Âplea-to-the-jurisdictionÂ section of its defensive pleading.Â  See Reata
Constr. Corp., 197 S.W.3d at 374.

Supporting Brief

Â Â Â Â Â Â Â Â Â Â Â  The Schronks also challenge
the propriety of the CityÂs brief supporting its plea to the jurisdiction Âto
the extent [the supporting brief] attempts to cure the defects or add grounds,
argument or evidence omitted from the Plea.Â Â Restated, they contend that a
brief in support of a plea to the jurisdiction cannot: (1) cure defects in the
plea to the jurisdiction; (2) allege additional grounds on which a court may
determine that it does not have jurisdiction; (3) present additional argument
regarding the grounds stated in the plea to the jurisdiction; or (4) present
evidence supporting the grounds stated in the plea to the jurisdiction.

Â Â Â Â Â Â Â Â Â Â Â  We need not address the
first two contentions because the CityÂs plea to the jurisdiction is not
ÂdefectiveÂ and because the brief in support of the CityÂs plea does not
present additional grounds on which the Court could find that the CityÂs
immunity from suit is not waived.

Â Â Â Â Â Â Â Â Â Â Â  In Burford v. Wilson,
the Tyler Court held that, under Rule of Civil Procedure 166a(c),[4]
exhibits attached to the appelleesÂ brief filed in support of their
summary-judgment motion but not referred to in the motion could not be
considered as part of the summary-judgment record.Â  885 S.W.2d 253, 256 (Tex. App.ÂTyler 1994), revÂd on other grounds, 904 S.W.2d 628 (Tex. 1995) (per
curiam).Â  The Supreme Court reversed because a deposition attached to the
appelleesÂ supporting brief was also referred to in the appellantsÂ
summary-judgment response. Â Wilson v. Burford, 904 S.W.2d 628,
629 (Tex. 1995) (per curiam).Â  The Burford case serves to illustrate the
unique provisions of Rule of Civil Procedure 166a governing summary-judgment
practice.Â  Admittedly, the Supreme Court has looked to summary-judgment cases for
guidance in defining the standard of review for a plea to the
jurisdiction.Â  See Tex. DepÂt of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 227-28 (Tex. 2004).Â  But the Court has expressly rejected the
application of the summary-judgment procedures required by Rule 166a in
the context of a plea to the jurisdiction.Â  Id. at 228-29.

Â Â Â Â Â Â Â Â Â Â Â  The Tyler Court observed in Burford
that Â[t]he sole purpose of a brief in support of a motion for summary judgment
is to aid the court in determining whether the summary judgment grounds and
evidence in support of those grounds entitles the movant to judgment as a
matter of law.ÂÂ  885 S.W.2d at 256.Â  Thus, a brief filed in support of a
particular trial pleading should ordinarily clarify the grounds asserted in
that pleading and present additional argument and authorities in support of
those grounds.

Â Â Â Â Â Â Â Â Â Â Â  The CityÂs supporting brief
is divided into eight parts: (1) authority to submit brief and appendix; (2)
general discussion of the law regarding sovereign immunity; (3) summary of the
SchronksÂ claims; (4) argument and authority regarding why the CityÂs immunity
is not waived under the Tort Claims Act; (5) argument and authority regarding
why the CityÂs immunity is not waived under the Health and Safety Code; (6)
argument and authority regarding why the CityÂs immunity has not been waived
with regard to the SchronksÂ bystander claims; (7) an alternative argument with
supporting authority that there is no evidence the AED caused a legally
cognizable loss of chance of survival; and (8) a summary and conclusion.

Â Â Â Â Â Â Â Â Â Â Â  In the concluding summary,
the supporting brief states:

Â Â Â Â Â Â Â Â Â Â Â  The CityÂs March 20, 2006
Plea to the Jurisdiction asserted the CityÂs sovereign immunity to all of
PlaintiffÂs [sic] claims.Â  The City asserted that the injuries and death at
issue are not caused by the CityÂs property.Â  The City asserted that bystander
claims are not the type of claim for which sovereign immunity is waived.Â  The
City asserted that Tort Claims Act Â§ 101.055 does not waive immunity.Â  For
these reasons, and based upon the evidence and in the Appendix supporting this
Brief, and based upon the legal arguments contained in this Brief, the CityÂs
Plea to the Jurisdiction must be granted and the claims against the City
dismissed.

Â 

Â Â Â Â Â Â Â Â Â Â Â  As clarified by this
concluding summary, the CityÂs supporting brief offers additional argument and
authorities to support the contentions set forth in its plea to the
jurisdiction, namely: (1) the City has immunity from suit because the AED did
not cause HelenÂs death; (2) there is no waiver of immunity for the SchronksÂ
bystander claims; and (3) the City has immunity from suit under sections
101.055 and 101.062 of the Tort Claims Act, which apply respectively to emergency
services providers and 9-1-1 emergency services.[5]Â 
The supporting brief does not assert additional grounds for immunity from suit.

Â Â Â Â Â Â Â Â Â Â Â  The supporting brief
incorporates by reference an appendix containing authenticated copies of
pertinent City records, depositions and exhibits, and affidavits.Â  This is the
evidence on which the City relies to prevail on its claim of immunity from
suit.Â  The Schronks argue that this is improper because the supporting evidence
is not attached to the CityÂs plea to the jurisdiction itself.Â  We disagree.Â  There
is no rule specifying the manner in which a party must present evidence in
support of a plea to the jurisdiction.Â  Although summary-judgment practice may
provide a useful analytical framework, there is no rule requiring that evidence
be attached to a plea to the jurisdiction to be considered by a trial court.Â  Cf. Tex. R. Civ. P. 166a(c) (summary judgment should be based in part
on evidence Âreferenced or set forth in the motion or responseÂ).

Â Â Â Â Â Â Â Â Â Â Â  The City filed its
supporting brief and appendix more than a month before the hearing on the plea
to the jurisdiction.Â  The Schronks do not contend that they were surprised or
prejudiced by the evidence included in the appendix and referenced in the
supporting brief.Â  Therefore, we hold that the court did not abuse its
discretion by considering the evidence the City submitted in this manner.

Nature of Jurisdictional Challenge

Â Â Â Â Â Â Â Â Â Â Â  Finally, the Schronks
contend that the plea to the jurisdiction is deficient because it does not
specify whether the City is challenging the adequacy of their petition or the
existence of jurisdictional facts.Â  See Miranda, 133 S.W.3d at 226-27 (describing
two types of challenges which may be asserted in a plea to the jurisdiction).

Â Â Â Â Â Â Â Â Â Â Â  The Schronks allege in their
petition that the CityÂs use of a defective AED was a proximate cause of
HelenÂs death.Â  The Schronks further allege that the Ânon-waiverÂ of immunity
under section 101.055 for emergency services providers does not apply because
the City acted Âwith conscious indifference or reckless disregard for the
safety of others.ÂÂ  And the Schronks allege that the Ânon-waiverÂ of immunity
under section 101.062 for providers of 9-1-1 emergency services does not apply
because the City violated statutes regarding the maintenance and testing of
AEDÂs.

Â Â Â Â Â Â Â Â Â Â Â  The City contends in its
plea to the jurisdiction that (1) it has immunity from suit under section
101.021 because the AED did not cause HelenÂs death; (2) there is no waiver of
immunity under section 101.021 for the SchronksÂ bystander claims; and (3) it
has immunity from suit under sections 101.055 and 101.062.

Â Â Â Â Â Â Â Â Â Â Â  A plea to the jurisdiction
which challenges the plaintiffÂs pleadings asserts that the plaintiffÂs
pleadings fail to allege Âfacts that affirmatively demonstrate the courtÂs
jurisdiction to hear the cause.ÂÂ  See Miranda, 133 S.W.3d at 226.Â 
Conversely, a plea to the jurisdiction which disputes the existence of
jurisdictional facts asserts in essence that the evidence conclusively negates
the existence of the relevant jurisdictional facts.Â  Id. at 227-28.

Â Â Â Â Â Â Â Â Â Â Â  The heart of the SchronksÂ
claims is that the CityÂs use of a defective AED was a proximate cause of
HelenÂs death.Â  The City does not contend in its plea to the jurisdiction that
this allegation is not sufficient to allege a waiver of immunity under section
101.021 or the other applicable statutes.Â  Rather, the City disputes whether
its use of the AED was a proximate cause of HelenÂs death.Â  Thus, Âan opposing
attorney of reasonable competenceÂ would understand that the CityÂs plea to the
jurisdiction challenged the existence of jurisdictional facts.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  The court did not abuse its
discretion by overruling the SchronksÂ special exceptions.Â  Accordingly, we
overrule the SchronksÂ second point.




Objections to the SchronksÂ Evidence

Â Â Â Â Â Â Â Â Â Â Â  The Schronks aver in their
fourth point that the court abused its discretion by sustaining the CityÂs
objections to the evidence they offered in response to the CityÂs plea to the
jurisdiction.[6]

Â Â Â Â Â Â Â Â Â Â Â  The Schronks do not contest
the applicability of the Rules of Evidence to evidence submitted in connection
with a plea to the jurisdiction.Â  We are aware of no reason these rules should
not govern the admissibility of such evidence.Â  See Tex. R. Evid. 101(b) (ÂExcept as
otherwise provided by statute, these rules govern civil and criminal
proceedings (including examining trials before magistrates) in all courts of Texas, except small claims courts.Â); cf. Allbritton v. Gillespie, Rozen, Tanner &
Watsky, P.C., 180 S.W.3d 889, 892 (Tex. App.ÂDallas 2005, pet. denied) (ÂSummary-judgment
evidence must be presented in a form that would be admissible in a conventional
trial proceeding.Â); Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.,
127 S.W.3d 235, 240 (Tex. App.ÂWaco 2003, no pet.) (same).

Depositions Regarding Violation of

Section 779.003 of the Health &
Safety Code

Â 

Â Â Â Â Â Â Â Â Â Â Â  The City raised a three-part
objection to deposition excerpts from various firefighters which the Schronks
offered to establish that the AED was not maintained and tested in accordance
with manufacturer guidelines and that the City thus violated section 779.003 of
the Health and Safety Code.[7]Â 
The City objected that the Schronks omitted from these excerpts the objections the
City lodged at the time of the depositions.[8]Â 
But see Tex. R. Civ. P. 203.6(b)
(ÂAll or part of a deposition may be used for any purpose in the same
proceeding in which it was taken.Â) (emphasis added); Jones v. Colley,
820 S.W.2d 863, 866 (Tex. App.ÂTexarkana 1991, writ denied) (Â[T]he defendants,
on the sole ground that the tape was out of chronological order or was not
complete, had no right to prevent the use of the edited videotape.Â  Their
remedy was to introduce the unedited deposition or their own edited version in
response to JonesÂ offer.Â).

Â Â Â Â Â Â Â Â Â Â Â  The City also objected that
the testimony of these firefighters was conclusory regarding any failure to
follow the manufacturerÂs guidelines because there is no evidence in the record
of: (1) the factual content of the guidelines allegedly violated; (2) how the
guidelines pertained to maintenance or testing; or (3) how the guidelines were
violated.Â  In addition, the City objected that this testimony was conclusory
regarding any violation of section 779.003 because there is no evidence that
the firefighters: (1) knew the content of this law; (2) knew how the law was
violated; or (3) were qualified to give an opinion concerning the alleged
violation.

Â Â Â Â Â Â Â Â Â Â Â  We first observe that the
CityÂs objections appear to be directed to the excerpts of deposition testimony
included within the body of the SchronksÂ response.Â  However, the Schronks
attached more complete excerpts of these depositions as exhibits.Â  Regarding
the manufacturerÂs guidelines, counsel handed the witnesses a copy of a 46-page
document with ÂDirections for UseÂ for the AED and asked them questions about
particular instructions without objection.[9]Â 
If the quoted excerpts are read standing alone, they are somewhat conclusory,
but when read in conjunction with the remainder of each witnessÂs testimony,
they merely summarize that witnessÂs previous testimony and are supported by a
written copy of the manufacturerÂs guidelines attached as an exhibit to one of the
depositions.[10]

Â Â Â Â Â Â Â Â Â Â Â  Summary-judgment evidence is
considered ÂconclusoryÂ if it Âdoes not provide the underlying facts to support
the conclusion.ÂÂ  Choctaw Props., 127 S.W.3d at 242 (quoting Dolcefino
v. Randolph, 19 S.W.3d 906, 930 (Tex. App.ÂHouston [14th Dist.] 2000, pet.
denied)) (other citations omitted).Â  ÂA ÂconclusoryÂ statement may set forth an
unsupported legal conclusion or an unsupported factual conclusion.ÂÂ  Id.Â  A lay witness Âmay not give legal conclusions or interpret the law to the
jury.ÂÂ  United Way of San Antonio, Inc. v. Helping Hands Lifeline Found.,
Inc., 949 S.W.2d 707, 713 (Tex. App.ÂSan Antonio 1997, writ denied).

Â Â Â Â Â Â Â Â Â Â Â  Taking as true the
deposition testimony favorable to the Schronks,[11]
Firefighter Steve Burchett testified that the manufacturerÂs guidelines
ÂspecificallyÂ say ÂyouÂre supposed to check the date codes on every battery
before you use them.ÂÂ  He did not know of anyone in the department who did
this, which was in his opinion a violation of the guidelines.Â  Lieutenant
Michael Gloff testified that the batteries in the AED had expired and their use
on the occasion in question was a violation of the guidelines.

Â Â Â Â Â Â Â Â Â Â Â  In both instances, these
witnesses provided an adequate factual basis for their testimony.Â  Thus, the
court abused its discretion to the extent that it sustained the CityÂs
objections on the basis that the testimony of these witnesses was conclusory
regarding the CityÂs alleged failure to follow the manufacturerÂs guidelines.Â  See
Choctaw Props., 127 S.W.3d at 242-43.

Â Â Â Â Â Â Â Â Â Â Â  However, both witnesses and
others were also asked whether this conduct constituted a violation of section
779.003.Â  This was improper.Â  See United Way of San Antonio, 949 S.W.2d at
713.Â  Thus, the court did not abuse its discretion insofar as it sustained the
CityÂs objections that these witnesses were improperly testifying regarding
legal conclusions.

Dr. ReeseÂs Affidavit

Â Â Â Â Â Â Â Â Â Â Â  The City objected to the
affidavit of the SchronksÂ expert Dr. Edward Reese on the grounds that: (1) he
relies on Laerdal records which cannot be used against the City; (2) his
affidavit is supported by a Ârandom collectionÂ of documents which are not
properly identified or authenticated; (3) his concluding statement of opinion
does not adequately identify the bases for the opinion; and (4) he is not
qualified to provide a medical opinion on the cause of Helen SchronkÂs death.

Â Â Â Â Â Â Â Â Â Â Â  The City states no legal
basis for its initial objection regarding Dr. ReeseÂs use of Laerdal records.Â 
We are aware of no such limitation.Â  The SchronksÂ theory is that City
employees used a defective AED manufactured by Laerdal which was a proximate
cause of Helen SchronkÂs death.Â  Laerdal records regarding the AED are relevant
to the SchronksÂ claims and admissible even against the City.Â  See Olympic
Arms, Inc. v. Green, 176 S.W.3d 567, 578 (Tex. App.ÂHouston [1st Dist.] 2004,
no pet.) (testimony of co-defendant gunsmith considered in product liability
suit against manufacturer of defective rifle barrel).

Â Â Â Â Â Â Â Â Â Â Â  Next, the City complains
that Dr. ReeseÂs affidavit is inadmissible because it is supported by a Ârandom
collectionÂ of documents which are not properly identified or authenticated.Â 
We disagree.Â  The affidavit specifically identifies the documents on which Dr.
Reese relied.Â  For example, Dr. Reese relied in paragraph 21 on ÂDefendant
LaerdalÂs ÂIncident InformationÂ report (see LMC 03590, also marked Exhibit
#30).ÂÂ  In paragraph 24, he referred to Âthe Med Watch Report [Mandatory
Reporting FDA Form 3500A]Â and provided citations to various ÂLMCÂ numbers[12]
in this report which correspond to the pagination of the report attached as an
exhibit to his affidavit.

Â Â Â Â Â Â Â Â Â Â Â  Regarding the admissibility
of the exhibits attached to Dr. ReeseÂs affidavit, Rule of Evidence 703
provides in pertinent part, ÂIf of a type reasonably relied upon by experts in
the particular field in forming opinions or inferences upon the subject, the
facts or data need not be admissible in evidence.ÂÂ  Tex. R. Evid. 703.Â  An expert in this case may reasonably
rely on the records of the manufacturer to evaluate whether the product in
question is defective.Â  Cf. Olympic Arms, 176 S.W.3d at 578 (experts
testified about rifle manufacturing process and about another defective rifle
barrel produced by defendant at about same time).Â  Therefore, the admissibility
of the exhibits is irrelevant.Â  See Tex.
R. Evid. 703.

Â Â Â Â Â Â Â Â Â Â Â  The City also complains that
Dr. ReeseÂs concluding statement renders his affidavit inadmissible because it
does not provide a sufficiently specific statement of the bases for his
opinion.Â  The statement in question reads, ÂThe opinions stated herein are
based upon information provided by the Plaintiff and my knowledge and expertise
with medical devices, the medical industry, and FDA Rules and Regulations.ÂÂ 
Standing alone, this probably would be insufficient.Â  Cf. Volkswagen of Am.,
Inc. v. Ramirez, 159 S.W.3d 897, 902, 911 (Tex. 2004) (expertÂs reliance on
the Âlaws of physicsÂ does not provide a sufficient basis for his opinion).Â 
However, Dr. Reese provided much more detail in the 15-plus pages preceding
this concluding summary statement.Â  In the body of his affidavit, Dr. Reese
relied on specified federal regulations, specified portions of LaerdalÂs
guidelines for use of the AED, LaerdalÂs incident information report, a
mandatory FDA ÂMed WatchÂ report regarding the incident, and other specified documents.Â 
Therefore, his affidavit provided sufficient factual substantiation for his
expert opinion regarding whether the AED was defective.Â  See Merrell v.
Wal-Mart Stores, Inc., 276 S.W.3d 117, 128 (Tex. App.ÂTexarkana 2009, pet. filed).

Â Â Â Â Â Â Â Â Â Â Â  Finally, the City challenges
Dr. ReeseÂs qualifications to render an expert opinion on the cause of Helen
SchronkÂs death.Â  Dr. Reese is not a medical doctor.Â  He has a doctor of philosophy
degree in medical technology studies and holds certifications as a forensic
examiner and a forensic consultant, a certification in forensic medicine, and
certification as a ÂLevel FiveÂ medical investigator.Â  He states in his
affidavit that he is Âa medical device expert.ÂÂ  He states in his CV that his
ÂcompetenciesÂ include determining Âif a causal relationship exists between a
suspect medical device and its manufacturer, distributor, physician, and/or
hospital.ÂÂ  (emphasis added).Â  Because Dr. Reese is not a medical doctor
and because his affidavit and CV do not demonstrate any special experience in
determining medical causation, we cannot say the court abused its discretion by
determining that he is not qualified to render an expert opinion on cause of
death.Â  See Methodist Health Ctr. v. Thomas, No. 14-07-00085-CV, 2007 Tex. App. LEXIS 6655, at *8-9 (Tex. App.ÂHouston [14th Dist.] 2007, no pet.) (mem. op.); Marts
ex rel. Marts v. Transp. Inc. Co., 111 S.W.3d 699, 703-04 (Tex. App.ÂFort
Worth 2003, pet. denied).

General References to Exhibits

Â Â Â Â Â Â Â Â Â Â Â  The City objected to
sections of the SchronksÂ response, beginning with paragraph 17, in which the
Schronks refer to Âample proofÂ that the CityÂs use of a malfunctioning AED was
a proximate cause of Helen SchronkÂs death.Â  Throughout several pages of the
response beginning here, the Schronks generally refer to Âexhibits A-F with
exhibitsÂ or Âexhibits A-GÂ without any more specificity.Â  It appears that the
Schronks sought to establish two things at this point in their response: (1) their
petition alleged sufficient facts to state a waiver of immunity; and (2) they
provided Âample proofÂ to support these allegations.Â  The City contends that
their general references to the exhibits do not constitute competent evidence
of cause of death.Â  To the extent the Schronks relied on these general
references to show evidence of cause of death, we agree.Â  See State v. Life Partners, Inc., 243 S.W.3d 236, 242 (Tex. App.ÂWaco 2007, pet. denied) (ÂA
general reference to a voluminous record that does not direct the trial court
and parties to the evidence on which the movant relies is insufficient.Â)
(quoting Aguilar v. Morales, 162 S.W.3d 825, 838 (Tex. App.ÂEl Paso 2005,
pet. denied)).

Dr. DesserÂs Affidavit

Â Â Â Â Â Â Â Â Â Â Â  The City objected that the
affidavit of Dr. Kenneth Desser is inadmissible because: (1) it did not comply
with Rule of Civil Procedure 194.2(f)(3) by providing a brief summary of the
basis for Dr. DesserÂs opinion; (2) it contains internal conflicts; and (3) it
fails to address undisputed evidence.[13]

Â Â Â Â Â Â Â Â Â Â Â  Rule 194.2(f) governs
disclosure of information regarding the opposing partyÂs testifying experts.Â  See
Tex. R. Civ. P. 194.2(f).Â  Under
the trial courtÂs scheduling order, the deadline for disclosure of testifying
experts was December 7, 2007.Â  The Schronks filed their supplemental response
with Dr. DesserÂs affidavit and the court heard the CityÂs plea to the
jurisdiction eight days before that deadline.[14]

Â Â Â Â Â Â Â Â Â Â Â  The City cites Cunningham
v. Columbia/St. DavidÂs Healthcare Sys., L.P., 185 S.W.3d 7 (Tex.
App.ÂAustin 2005, no pet.), for the proposition that an expertÂs affidavit is
not admissible summary-judgment evidence if the expert has not been properly
designated under Rule 194.2.Â  Id. at 12-13.Â  The Supreme Court has
recently endorsed this proposition. Â Fort Brown Villas III
Condominium AssÂn v. Gillenwater, 52 Tex. Sup. Ct. J. 632, 633-34, 2009 Tex. LEXIS 125, at *3-7 (Tex. Apr. 17, 2009) (per curiam).Â  However, we are unaware of any
decision applying this same principle in the context of a plea to the
jurisdiction, and we decline to do so.

Â Â Â Â Â Â Â Â Â Â Â  Summary judgments are
rendered where: (1) a plaintiff conclusively establishes each element of his
claim; (2) a defendant conclusively negates a single element of a plaintiffÂs
claim; or (3) a defendant conclusively establishes an affirmative defense.Â  See
U.S. Fire Ins. Co. v. Scottsdale Ins. Co., 264 S.W.3d 160, 165 (Tex. App.ÂDallas 2008, no pet.); Van Es v. Frazier, 230 S.W.3d 770, 784 (Tex. App.ÂWaco 2007, pet. denied).Â  Thus, a summary-judgment proceeding focuses on the
merits of the plaintiffÂs claim or of an affirmative defense.

Â Â Â Â Â Â Â Â Â Â Â  By contrast, Â[a] plea to
the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause
of action without regard to whether the claims asserted have merit.ÂÂ  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).Â  Although the
State or other governmental unit bears the burden of conclusively establishing
that its immunity has not been waived, Âwe protect the plaintiffs from having
to Âput on their case simply to establish jurisdiction.ÂÂÂ  Miranda, 133
S.W.3d at 228 (quoting Blue, 34 S.W.3d at 554).Â  ÂThe purpose of a
dilatory plea is not to force the plaintiffs to preview their case on the
merits but to establish a reason why the merits of the plaintiffsÂ claims
should never be reached.ÂÂ  Blue, 34 S.W.3d at 554; cf. Kelly v.
Rendon, 255 S.W.3d 665, 672 (Tex. App.ÂHouston [14th Dist.] 2008, no pet.)
(expert report in healthcare liability case Âneed not marshall all of the
plaintiffÂs proofÂ and need not satisfy same admissibility standards as
evidence offered in summary-judgment proceeding or at trial) (citing Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878-79 (Tex. 2001)); Baylor Univ. Med. Ctr. v. Rosa, 240 S.W.3d 565, 570 (Tex.
App.ÂDallas 2007, pet. denied) (same).

Â Â Â Â Â Â Â Â Â Â Â  Although evidence offered in
support of or in response to a plea to the jurisdiction must satisfy the
requirements of the Rules of Evidence, we hold that an expert need not
be properly designated under Rule of Civil Procedure 194.2 before he can
offer evidence relevant to the jurisdictional issues in dispute.Â  This is
particularly true when, as here, the deadline for designation of testifying
experts had not passed.

Â Â Â Â Â Â Â Â Â Â Â  Finally, the City objected
to Dr. DesserÂs affidavit because it has internal conflicts and fails to
address undisputed evidence.Â  Here, the City refers primarily to Dr. DesserÂs
assumption that there was Âa 6 minute delay from cardiac arrest to attempted
electrical defibrillationÂ while other evidence in the record suggests that the
period of delay may have been more than 20 minutes.Â  However, these complaints
go to the credibility of Dr. DesserÂs statements and not the admissibility of
his affidavit.

Â Â Â Â Â Â Â Â Â Â Â  If a party provides
inconsistent or conflicting summary judgment proof, that party has created a
fact issue for the trier of fact to resolve.Â  As the Supreme Court has stated, ÂIf
the motion involves the credibility of affiants or deponents, or the weight of
the showings or a mere ground of inference, the motion should not be granted.ÂÂ 


Â 

Thompson v. City of Corsicana Hous.
Auth., 57 S.W.3d 547,
557 (Tex. App.ÂWaco 2001, no pet.) (quoting Great Am. Reserve Ins. Co. v.
San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965)) (other
citations omitted); accord Pierce v. Washington Mut. Bank, 226 S.W.3d 711,
717-18 (Tex. App.ÂTyler 2007, pet. denied); Shaw v. Maddox Metal Works, Inc.,
73 S.W.3d 472, 478 (Tex. App.ÂDallas 2002, no pet.); Larson v. Family
Violence & Sexual Assault Prevention Ctr. of S. Tex., 64 S.W.3d 506,
513 (Tex. App.ÂCorpus Christi 2001, pet. denied).Â  We have previously applied
this principle in an appeal involving a plea to the jurisdiction in which a
political subdivision claimed immunity from suit.Â  See Stewart v. City of Corsicana, 211 S.W.3d 844, 849-50 (Tex. App.ÂWaco 2006), revÂd on other grounds,
249 S.W.3d 412 (Tex. 2008).

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, the court
abused its discretion by sustaining the CityÂs objections to Dr. DesserÂs
affidavit.

Summary

Â Â Â Â Â Â Â Â Â Â Â  The trial court did not abuse
its discretion when it sustained the CityÂs objections that: (1) the
firefighters were improperly testifying regarding legal conclusions; (2) Dr.
Reese was not qualified to render an expert opinion on HelenÂs cause of death;
and (3) the Schronks provided general references to their supporting evidence
to show cause of death.Â  The trial court abused its discretion when it
sustained the CityÂs objections that: (1) the Schronks provided only selected
excerpts of deposition testimony in the body of their response to the plea to
the jurisdiction; (2) the firefighters were improperly testifying regarding
factual conclusions; (3) Dr. ReeseÂs affidavit was otherwise objectionable; and
(4) Dr. DesserÂs affidavit was inadmissible.Â  Accordingly, we sustain the SchronksÂ
fourth point in part and overrule it in part.

Plea to the Jurisdiction

Â Â Â Â Â Â Â Â Â Â Â  The Schronks contend in
their third point that the court erred by granting the CityÂs plea to the
jurisdiction.Â  As we have already observed, the primary focus of the CityÂs
plea to the jurisdiction is whether the use of the AED was a proximate cause of
HelenÂs death.

Â Â Â Â Â Â Â Â Â Â Â  When, as here, a plea to the
jurisdiction challenges the existence of jurisdictional facts, we Âtake as true
all evidence favorable to the [plaintiffs]Â and Âindulge every reasonable
inference and resolve any doubts in the [plaintiffsÂ] favor.Â Â Miranda,
133 S.W.3d at 228; Johnson v. Johnson County, 251 S.W.3d 107, 109 (Tex. App.ÂWaco 2008, pet. denied).Â  To avoid dismissal, the plaintiffs must Âshow that
there is a disputed material fact regarding the jurisdictional issue.ÂÂ  Miranda,
133 S.W.3d at 228.

Â Â Â Â Â Â Â Â Â Â Â  Section 101.021(2) waives a
governmental unitÂs immunity from suit and liability for personal injury or
death proximately caused by a condition or use of tangible personal property if
a private person would be liable under the same circumstances.Â  See Tex. Civ. Prac. & Rem. Code Ann. Â§Â§
101.021(2), 101.025(a) (Vernon 2005); City of Grapevine v. Sipes, 195
S.W.3d 689, 691-92 (Tex. 2006); Wise RegÂl Health Sys. v. Brittain, 268
S.W.3d 799, 807 (Tex. App.ÂFort Worth 2008, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  The City relies on cases
distinguishing ÂuseÂ and Ânon-useÂ of tangible personal property with the
former being necessary to waive immunity.Â  See, e.g., Tex. DepÂt of Criminal
Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001) (Âour cases have
distinguished claims involving the failure to use, or the non-use of property,
which do not waive sovereign immunity, from claims involving a Âcondition or
useÂ of tangible personal property that causes injury, which do effect a
waiverÂ).Â  ÂÂUseÂ means Âto put or bring into action or service; to employ for
or apply to a given purpose.ÂÂÂ  Id. at 588 (quoting Tex. Natural Res.
Conservation CommÂn v. White, 46 S.W.3d 864, 869 (Tex. 2001)).Â  Here, there
is no dispute that City firefighters ÂusedÂ the AED in an effort to resuscitate
Helen.Â  The primary dispute is whether their use of this AED was a proximate
cause of HelenÂs death.

Proximate Cause

Â Â Â Â Â Â Â Â Â Â Â  The Schronks cite Salcedo
v. El Paso Hospital District, 659 S.W.2d 30 (Tex. 1983),[15]
and related authorities for the proposition that the requisite causation is
established by evidence that the use of the AED was Âa contributing factorÂ to
HelenÂs death.Â  See id. at 32.Â  The City responds by citing Miller
for the proposition that the use of the AED must have Âactually causedÂ HelenÂs
death.Â  See Miller, 51 S.W.3d at 588 (citing White, 46 S.W.3d at
869).Â  The correct standard of causation lies somewhere in between.Â  See Wise
RegÂl Health Sys., 268 S.W.3d at 808 (ÂThe causation requirement in section
101.021(2) is one of proximate causeÂnot a heightened standard such as sole
cause.Â); Univ. of Tex. Med. Branch v. Estate of Blackmon, 169 S.W.3d 712,
717 (Tex. App.ÂWaco 2005) (ÂThe court in White did not expressly or
implicitly abandon the TTCAÂs proximate-cause requirement for a different
standard such as immediate cause, direct cause, or sole cause.Â), vacated on
other grounds, 195 S.W.3d 98 (Tex. 2006) (per curiam).

Â Â Â Â Â Â Â Â Â Â Â  Section 101.021 provides
that Âproximate causeÂ is the applicable standard. Â See Tex. Civ. Prac. & Rem. Code Ann. Â§ 101.021(1)
(Âproximately causedÂ), Â§ 101.021(2) (Âso causedÂ); see Sipes, 195
S.W.3d at 691-92; Dallas County Mental Health & Mental Retardation v.
Bossley, 968 S.W.2d 339, 342-43 (Tex. 1998); Wise RegÂl Health Sys.,
268 S.W.3d at 807.Â  ÂProximate cause includes both cause in fact and
foreseeability.Â[16]Â 
 Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238,
246 (Tex. 2008).Â  ÂIn particular, cause in fact requires that the allegedly
negligent act or omission constitute Âa substantial factor in bringing about
the injuries, and without it, the harm would not have occurred.ÂÂÂ  Id. (quoting IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 799 (Tex. 2004)).Â  This principle has been applied in cases
governed by the Tort Claims Act, although not consistently. Â See, e.g.,
Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992); Wise RegÂl
Health Sys., 268 S.W.3d at 807; Ordonez v. El Paso County, 224
S.W.3d 240, 244 (Tex. App.ÂEl Paso 2005, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  Cause in fact is proven in
negligence cases involving injury or death by evidence that the injury or death
was in Âreasonable medical probabilityÂ or in Âreasonable probabilityÂ caused
by the defendantÂs negligent act or omission.[17]Â 
 Park Place Hosp. v. Est. of Milo, 909 S.W.2d 508, 511 (Tex. 1995); Kramer v. Lewisville MemÂl Hosp., 858 S.W.2d 397, 400 (Tex. 1993); see
 Columbia Rio Grande Healthcare, L.P. v. Hawley, 52 Tex. Sup. Ct. J. 804,
808, 2009 Tex. LEXIS 323, at *16 (Tex. June 5, 2009).Â  This means Âsimply that
it is Âmore likely than notÂ that the ultimate harm or condition resulted from
such negligence.ÂÂ  Kramer, 858 S.W.2d at 400 (quoting Lenger v.
PhysicianÂs Gen. Hosp., Inc., 455 S.W.2d 703, 707 (Tex. 1970)); accord
Thomas v. Farris, 175 S.W.3d 896, 899 (Tex. App.ÂTexarkana 2005, pet.
denied); Marvelli v. Alston, 100 S.W.3d 460, 480 (Tex. App.ÂFort Worth
2003, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  The Supreme Court has
explained in more detail how this requirement is met Âwhere preexisting illnesses
or injuries have made a patientÂs chance of avoiding the ultimate harm
improbable even before the allegedly negligent conduct occursÂi.e., the
patient would die or suffer impairment anyway.Â Â Kramer, 858 S.W.2d at
400; Arredondo v. Rodriguez, 198 S.W.3d 236, 239 (Tex. App.ÂSan Antonio
2006, no pet.); Hodgkins v. Bryan, 99 S.W.3d 669, 673 (Tex. App.ÂHouston [14th Dist.] 2003, no pet.).Â  In this instance, Ârecovery is barred when the
defendantsÂ negligence deprived the [plaintiff] of only a fifty percent or less
chance of survival.ÂÂ  Park Place Hosp., 909 S.W.2d at 511 (citing
Kramer, 858 S.W.2d at 400); Arredondo, 198 S.W.3d at 239; accord
 Columbia Rio Grande Healthcare, 52 Tex. Sup. Ct. J. at 808, 2009 Tex. LEXIS 323, at *17; Hodgkins, 99 S.W.3d at 673.

Â Â Â Â Â Â Â Â Â Â Â  Here, it is undisputed that
City employees actually used the AED in an attempt to resuscitate Helen.Â  It is
likewise undisputed that the AED did not work because the battery did not have
a sufficient charge.Â  Thus, the Âdispositive issue as to the claims against the
[City] is whether [Helen] could have survived if [a properly functioning AED had
been used].ÂÂ  See Park Place Hosp., 909 S.W.2d at 511; Arredondo,
198 S.W.3d at 239.

Â Â Â Â Â Â Â Â Â Â Â  The City refers to alleged
Âjudicial admissionsÂ by the SchronksÂ counsel as establishing that the use of
the AED was not a proximate cause of HelenÂs death.[18]Â 
The two statements are: ÂThereÂs no contention the AED caused the underlying
heart conditionÂ; and ÂthereÂs not been any allegations by anyone that the AED
itself killed her or caused her to die.Â

Â Â Â Â Â Â Â Â Â Â Â  ÂA judicial admission must
be a clear, deliberate, and unequivocal statement.ÂÂ  Givens v. Ward, 272
S.W.3d 63, 70 (Tex. App.ÂWaco 2008, no pet.) (quoting Horizon/CMS Healthcare,
34 S.W.3d at 905).Â  The first quoted statement, which refers to HelenÂs
Âunderlying heart condition,Â does not constitute Âa clear, deliberate, and
unequivocal statementÂ that the use of the AED was not a proximate cause of her
death.Â  The second statement must be read in context with a follow-up statement
by counsel, namely, ÂWhatÂs been alleged by the plaintiffs in this case is that
the AED didnÂt work and so therefore she couldnÂt be rescued from her ventrical
fibrillation.ÂÂ  When read in context, this second statement likewise does not
constitute Âa clear, deliberate, and unequivocalÂ admission.Â  Thus, the
statements in question do not constitute judicial admissions.Â  See id.

Â Â Â Â Â Â Â Â Â Â Â  Dr. Desser concludes in his
report that Â[t]o a reasonable degree of medical probability exceeding 51%,
Mrs. Schronk would have been successfully defibrillated had the Laerdal
Heartstart 911 automatic electrical defibrillator functioned appropriately.ÂÂ 
This conclusion was based on his review of the medical records, the fire
department records including the monitor strip from the AED, the deposition
testimony of various firefighters who responded to the SchronksÂ home, and
Â[p]opulation-based cohort studies.Â

Â Â Â Â Â Â Â Â Â Â Â  Dr. Desser explains that a
Â10% increment of ventricular fibrillation mortality per minute without
electrical defibrillation statistic applies to subjects who are not undergoing
cardiopulmonary resuscitation by a bystander who is trained in the technique.ÂÂ 
He notes, however, that Helen did receive CPR from a trained EMT.Â  He opines
that the performance of CPR while awaiting the AED Âwould, to a reasonable
degree of medical probability, have increased her chance of successful
electrical defibrillation and survival to over 51%.ÂÂ  He describes this as Âa
conservative estimate since success rates for non-physician bystanders who are
trained in [CPR] in combination with electrical defibrillation has [sic] a
success rate which exceeds 80%.ÂÂ  Desser noted that this survival rate is based
on Âdata which has been accumulated from free-standing cardiac rehabilitation
units where cardiac arrests have occurred in subjects with serious
cardiovascular disorders.ÂÂ  He also observed that the survival rate is Âeven
higherÂ for Ânon-medical environments with access to [EMTÂs] and
defibrillators.Â

Â Â Â Â Â Â Â Â Â Â Â  To summarize, Desser took
into account HelenÂs heart condition before she suffered the cardiac arrest,
examined studies regarding cardiac patients who received CPR Âin combination
with electrical defibrillation,Â and concluded that, in reasonable medical
probability, there is a better than 51% chance that Helen would have been
successfully defibrillated and would have survived her cardiac arrest if the
AED had functioned properly.

Â Â Â Â Â Â Â Â Â Â Â  Because we Âtake as true all
evidence favorable to the [Schronks]Â and Âindulge every reasonable inference
and resolve any doubts in [their] favor,Â we conclude Âthat there is a disputed
material factÂ regarding whether the use of the AED was a proximate cause of
HelenÂs death.Â  See Bustillos v. Rowley, 225 S.W.3d 122, 129-31 (Tex. App.ÂEl Paso 2005, no pet.) (expert report that it was Âmore likely than notÂ that
patient would have survived adequately addressed causation regarding failure to
monitor cardiac patient);Â  Marvelli, 100 S.W.3d at 481 (expertÂs
testimony that plaintiffÂs vision would have Âin reasonable medical probabilityÂ
been saved held legally sufficient to establish cause-in-fact); Bottoms v.
Smith, 923 S.W.2d 247, 251-52 (Tex. App.ÂHouston [14th Dist.] 1996, no
writ) (expertÂs testimony that, if appropriate tests had been done, polyp would
have been identified and patient would have better than 70% survival rate held
sufficient to create fact issue on proximate cause regarding patientÂs death).

Exception for Emergency Responders

Â Â Â Â Â Â Â Â Â Â Â  According to section
101.055(2) of the Tort Claims Act, there is no waiver of immunity under the Act[19]
for the conduct of an emergency responder Âif the action is in compliance with
the laws and ordinances applicable to emergency action, or in the absence of
such a law or ordinance, if the action is not taken with conscious indifference
or reckless disregard for the safety of others.ÂÂ  Tex. Civ. Prac. & Rem. Code Ann. Â§ 101.055(2) (Vernon 2005).Â 
The Schronks argue that in this instance the CityÂs failure to maintain the AED
in accordance with the manufacturerÂs guidelines constitutes a violation of law
(section 779.003 of the Health and Safety Code) and removes the conduct of the
emergency responders from the exception provided by section 101.055(2).

Â Â Â Â Â Â Â Â Â Â Â  Section 779.003 states, ÂA
person or entity that owns or leases an automated external defibrillator shall
maintain and test the automated external defibrillator according to the
manufacturer's guidelines.ÂÂ  Tex. Health
& Safety Code Ann. Â§ 779.003 (Vernon 2003).Â  This statute is found
in title 9, subtitle B of the Health and Safety Code.Â  See Act of May
26, 1999, 76th Leg., R.S., ch. 679, Â§ 1, 1999 Tex. Gen. Laws 3250.Â  Title 9 is
entitled ÂSafetyÂ and subtitle B is entitled ÂEmergencies.ÂÂ  See Act of
May 18, 1989, 71st Leg., R.S., ch. 678, Â§ 1, 1989 Tex. Gen. Laws 2230, 2235
(table of contents).Â  Subtitle B also includes statutory provisions governing,
among other things, Âemergency communications,Â Âemergency medical services,Â
and Âemergency services districts.ÂÂ  Id.Â  Thus, we hold that section
779.003 is a law Âapplicable to emergency action.ÂÂ  See Tex. Civ. Prac. & Rem. Code Ann. Â§ 101.055(2);
Mejia v. City of San Antonio, 759 S.W.2d 198, 200 (Tex. App.ÂSan Antonio
1988, no writ).

Â Â Â Â Â Â Â Â Â Â Â  The Schronks presented the
deposition testimony of several firefighters detailing how the Burleson Fire
Department failed to maintain the AED in accordance with the manufacturerÂs
guidelines. Â Taking as true all evidence favorable to the Schronks and
indulging every reasonable inference and resolving any doubts in their favor,
we conclude Âthat there is a disputed material factÂ regarding whether the City
failed to comply with a law Âapplicable to emergency action.ÂÂ  See Mejia,
759 S.W.2d at 200-01.

Exception for 9-1-1 Emergency Services

Â Â Â Â Â Â Â Â Â Â Â  According to section 101.062
of the Tort Claims Act, there is a waiver of immunity for: 

a claim against a public agency that
arises from an action of an employee of the public agency or a volunteer under
direction of the public agency and that involves providing 9-1-1 service or
responding to a 9-1-1 emergency call only if the action violates a statute or
ordinance applicable to the action.

Â 

Tex. Civ. Prac.
& Rem. Code Ann. Â§ 101.062(b)
(Vernon 2005).

Â Â Â Â Â Â Â Â Â Â Â  Under section 101.062(b),
the CityÂs immunity is waived only if the SchronksÂ claims arise from the
action of a City employee (1) Âthat involvesÂ  .Â  .Â  .Â  responding to a 9-1-1
emergency callÂ and (2) that Âviolates a statute or ordinance applicable to the
action.ÂÂ  Here, the DepartmentÂs maintenance of the AED is directly involved
with its response to 9-1-1 calls.Â  As noted, the Schronks have presented
evidence that the Department failed to maintain the AED in accordance with the
manufacturerÂs guidelines, which would be a violation of section 779.003.

Â Â Â Â Â Â Â Â Â Â Â  Taking as true all evidence
favorable to the Schronks and indulging every reasonable inference and
resolving any doubts in their favor, we conclude Âthat there is a disputed
material factÂ regarding whether an action of a City employee that involved
responding to a 9-1-1 call violated a statute applicable to the action.Â  See
City of Dallas v. Porter, No. 05-02-00364-CV, 2002 Tex. App. LEXIS 5658, at
*7-10 (Tex. App.ÂDallas Aug. 2, 2002, no pet.) (not designated for
publication).

Summary

Â Â Â Â Â Â Â Â Â Â Â  The Schronks presented
evidence raising Âa disputed material factÂ regarding whether the CityÂs use of
the AED was a proximate cause of HelenÂs death, whether the City failed to
comply with a Âlaw[ ] applicable to emergency action,Â and whether an action of
a City employee that involved responding to a 9-1-1 call violated a statute
applicable to the action.Â  Therefore, the court erred by granting the CityÂs
plea to the jurisdiction.Â  We sustain the SchronksÂ third point.

Summary Judgment

Â Â Â Â Â Â Â Â Â Â Â  The Schronks contend in
their first point that the court erred by granting LaerdalÂs summary-judgment
motion.Â  In particular, they argue: (1) the trial court granted only LaerdalÂs
traditional summary-judgment motion; (2) LaerdalÂs motion addressed only their
negligence claim and thus summary judgment was improper on their strict product
liability claim; and (3) genuine issues of material fact remain on both claims.Â 
Laerdal also presents a procedural issue, contending that Dr. ReeseÂs affidavit
cannot be considered part of the summary-judgment record on appeal because the
trial court sustained the CityÂs objections to the affidavit.

Standards of Review

Â Â Â Â Â Â Â Â Â Â Â  In reviewing a traditional summary
judgment, we must consider whether reasonable and fair-minded jurors could
differ in their conclusions in light of all of the evidence presented.Â  See
Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d 566, 568
(Tex. 2006) (per curiam); City of Keller v. Wilson, 168 S.W.3d 802,
822-24 (Tex. 2005)).Â  We must consider all the evidence in the light most
favorable to the nonmovant, indulging every reasonable inference in favor of
the nonmovant and resolving any doubts against the movant.Â  See Goodyear
Tire, 236 S.W.3d at 756 (citing Sudan v. Sudan, 199 S.W.3d 291, 292
(Tex. 2006) (per curiam); Spates, 186 S.W.3d at 568).

Â Â Â Â Â Â Â Â Â Â Â  We apply the same standard
in reviewing a no-evidence summary judgment as we would in reviewing a directed
verdict.Â  See Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 581 (Tex. 2006).Â  ÂWe review the evidence presented by the motion and response in the light most
favorable to the party against whom the summary judgment was rendered,
crediting evidence favorable to that party if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not.ÂÂ  Id. at 582.Â Â  A no-evidence summary judgment will be defeated if the nonmovant
produces some evidence Âraising an issue of material factÂ on the elements
challenged by the movant.Â  Id.

Procedural Issues

Â Â Â Â Â Â Â Â Â Â Â  Laerdal filed a
summary-judgment motion presenting both no-evidence and traditional grounds.Â 
They entitled this pleading ÂDefendant Laerdal Medical Corp.Âs Motion for
Summary Judgment and No Evidence Motion for Summary Judgment.ÂÂ  With regard to
the SchronksÂ negligence claims, Laerdal alleged that there was no evidence
that: (1) the AED or its battery was Âdefectively manufactured, designed,
supplied, sold or marketed to the CityÂ; or (2) any act or failure to act on
LaerdalÂs part was a proximate cause of HelenÂs injuries.Â  With regard to the
SchronksÂ strict product liability claim, Laerdal alleged that there was no
evidence that the AED or its battery was defective.Â  As a traditional ground
for summary judgment, Laerdal alleged that the Âundisputed evidence
demonstrates neither the HeartStart 911 AED or the accompanying battery used
during the attempted resuscitation were defective.Â

Â Â Â Â Â Â Â Â Â Â Â  In the SchronksÂ
summary-judgment response, they argued that genuine issues of material fact
remained concerning whether: (1) the AED malfunctioned according to FDA
regulations; (2) the AED battery was ÂmisbrandedÂ (i.e., mislabeled)
under FDA regulations regarding replacement of batteries; (3) Laerdal failed to
provide adequate training and service to the City regarding battery
maintenance; and (4) these were proximate causes of HelenÂs death.

Â Â Â Â Â Â Â Â Â Â Â  In its order granting
summary judgment, the court stated that it had considered and was granting the
ÂMotion for Summary Judgment.ÂÂ  The court rendered judgment that the Schronks
take nothing on their claims against Laerdal.Â  The Schronks first contend that,
in view of the two-part title Laerdal gave to its summary-judgment pleading,
the courtÂs reference to the ÂMotion for Summary JudgmentÂ is necessarily a
reference to only the traditional grounds for summary judgment stated in the
motion.Â  We disagree.

Â Â Â Â Â Â Â Â Â Â Â  At the summary-judgment
hearing, the court informed the parties that it wanted to hear ÂLaerdalÂs
Motion for Summary Judgment.ÂÂ  LaerdalÂs counsel promptly advised the court
that LaerdalÂs motion encompassed both traditional grounds and no-evidence
grounds for summary judgment.Â  The Schronks did not object to this
characterization.Â  Thus we hold that the trial courtÂs order granted both the
traditional and no-evidence portions of LaerdalÂs summary-judgment motion.Â  This
holding also answers the SchronksÂ next argument, namely, that the court
granted summary judgment only on the SchronksÂ negligence claim because that is
the only claim challenged by the traditional portion of LaerdalÂs
summary-judgment motion.

Â Â Â Â Â Â Â Â Â Â Â  Laerdal contends that Dr.
ReeseÂs affidavit is not part of the summary-judgment record because the trial
court sustained the CityÂs objections to the affidavit.Â  Laerdal filed written
objections to Dr. ReeseÂs affidavit but did not call those objections to the
trial courtÂs attention at the summary-judgment hearing and did not obtain a
ruling on the objections.[20]

Â Â Â Â Â Â Â Â Â Â Â  Objections to the form of
summary-judgment evidence are preserved for appellate review only if those
objections are made and ruled on in writing by the trial court.Â  See Choctaw
Props., 127 S.W.3d at 241; Trusty v. Strayhorn, 87 S.W.3d 756, 762 (Tex. App.ÂTexarkana 2002, no pet.).Â  By contrast, objections to the substance of such
evidence may be raised for the first time on appeal.Â  See Choctaw Props.,
127 S.W.3d at 241; Trusty, 87 S.W.3d at 765.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  We assume without deciding
that Laerdal may rely on the CityÂs objections and the courtÂs rulings
thereon.Â  As we have determined, however, the only objection which the trial
court properly sustained was the objection that Dr. Reese was not qualified to
give an expert opinion on HelenÂs cause of death.Â  Nevertheless, because
LaerdalÂs primary objection is that Dr. ReeseÂs affidavit is conclusory, we may
consider that objection for the first time on appeal because it challenges the
substance of the evidence.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  Laerdal contends that Dr.
ReeseÂs affidavit is conclusory because it is Ânot based on anything remotely
related to the facts,Â because it is Âinstead based solely on his own
conjecture and conclusions,Â and because there is Âno evidence he inspected,
evaluated or tested the device or battery in question.ÂÂ  Because Laerdal makes
only these general objections and provides scant argument or authority,[21]
we limit our analysis to the issue of whether Dr. ReeseÂs affidavit is
conclusory because he did not personally inspect the AED or its battery.Â  Summary-judgment
evidence is considered ÂconclusoryÂ if it Âdoes not provide the underlying
facts to support the conclusion.ÂÂ  Choctaw Props., 127 S.W.3d at 242
(quoting Dolcefino, 19 S.W.3d at 930)).

Â Â Â Â Â Â Â Â Â Â Â  Under Rule of Evidence 703,
an expertÂs opinion may be based on facts or data Âperceived by, reviewed by,
or made known to the expert at or before the hearing.ÂÂ  Tex. R. Evid. 703.Â  Such facts or data need not be admissible
in evidence if they are Âof a type reasonably relied upon by experts in the
particular field.ÂÂ  Id.Â  Personal knowledge of the underlying facts or
data is not required.Â  See id. 602, 703; Henderson v. State, 14
S.W.3d 409, 412 (Tex. App.ÂAustin 2000, no pet.); 2 Steven Goode et al., Guide to the Texas Rules of Evidence Â§ 703.3
(3d ed. 2002).Â  Thus, it is not necessary for a testifying expert to have
personally inspected an object as a prerequisite to offering expert testimony
regarding that object.Â  See SPT Fed. Credit Union v. Big H Auto Auction,
Inc., 761 S.W.2d 800, 802-03 (Tex. App.ÂHouston [1st Dist.] 1988, no writ)
(expert permitted to testify to value of shrimp boat even though he had never
inspected or viewed the boat).Â  That the expert had not personally inspected
the object would go to the weight of his testimony and not its admissibility.Â  See
LMC Complete Automotive, Inc. v. Burke, 229 S.W.3d 469, 478 (Tex. App.ÂHouston [1st Dist.] 2007, pet. denied) (ÂThe weakness of facts in support of an
expertÂs opinion generally goes to the weight of the testimony rather than the
admissibility.Â).

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, we reject
LaerdalÂs challenge to the admissibility of Dr. ReeseÂs affidavit.

Defective Product

Â Â Â Â Â Â Â Â Â Â Â  The Schronks contend that
genuine issues of material fact remain on the question of whether the AED or its
battery was defective.[22]Â 
Laerdal alleged in its summary-judgment motion that: (1) the evidence
conclusively establishes that the AED and its battery were not defective and
were Âfully functional and operationalÂ on the occasion in question; and (2)
there is no evidence that (a) the AED or its battery was defective or (b) the
AED or its battery was Âdefectively manufactured, designed, supplied, sold or
marketed to the City.Â

Â Â Â Â Â Â Â Â Â Â Â  The Schronks relied
primarily on Dr. ReeseÂs affidavit in their summary-judgment response to
establish that the AED was defective.Â  They assert essentially four defects:
(1) the AED malfunctioned because it did not provide defibrillating shocks
after giving a Âlow batteryÂ warning; (2) the AED malfunctioned because it
never gave a Âreplace batteryÂ warning; (3) the AED battery is misbranded
because it is labeled with a Ârecommended replacementÂ date rather than an
Âexpiration dateÂ; and (4) the AED battery is misbranded because its labeling
is not sufficiently prominent.

Â Â Â Â Â Â Â Â Â Â Â  According to pertinent FDA
regulations:

ÂMalfunctionÂ means the failure of a
device to meet its performance specifications or otherwise perform as intended.
Performance specifications include all claims made in the labeling for the
device. Â The intended performance of a device refers to the intended use for
which the device is labeled or marketed, as defined in Â§ 801.4 of this chapter.

Â 

21 C.F.R. Â§ 803.3.Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Section 301 of the Federal
Food, Drug and Cosmetic Act prohibits the sale or distribution of ÂmisbrandedÂ[23]
drugs and medical devices.[24]Â 
21 U.S.C.S. Â§ 331(a) (LexisNexis 2006).Â  Section 502 defines a ÂmisbrandedÂ
drug or device in pertinent part as follows:

False or misleading label. Â If its
labeling is false or misleading in any particular.

Â 

Prominence of information on label. Â If
any word, statement, or other information required by or under authority of
this Act [21 USCS Â§Â§ 301 et seq.] to appear on the label or labeling is not
prominently placed thereon with such conspicuousness (as compared with other
words, statements, designs, or devices, in the labeling) and in such terms as
to render it likely to be read and understood by the ordinary individual under
customary conditions of purchase and use.

Â 

Restricted devices using false or
misleading advertising or used in violation of regulations. Â In the case of any
restricted device distributed or offered for sale in any State, if (1) its
advertising is false or misleading in any particular, or (2) it is sold,
distributed, or used in violation of regulations prescribed under section
520(e) [21 USCS Â§ 360j(e)].

Â 

Id. Â§ 352(a), (c), (q) (LexisNexis 2006); see also Tex. Health & Safety Code Ann. Â§ 431.112(a)(1),
(c), (o) (Vernon Supp. 2008) (similar definitions for misbranded drug or device
in Texas Food, Drug, and Cosmetic Act).

Â Â Â Â Â Â Â Â Â Â Â  Dr. Reese noted that,
according to the instruction manual for the AED, Âa low battery signal
indicates that there is sufficient energy remaining in the battery to allow
four (4) additional shocks.ÂÂ  Firefighter Burchett testified that when the AED
indicated that a defibrillating shock should be administered to Helen, the AED
Âsaid audibly ÂLow BatteryÂÂ but failed to administer a shock.Â  The evidence is
undisputed that the AED never administered a defibrillating shock on that
occasion.

Â Â Â Â Â Â Â Â Â Â Â  Dr. Reese also observed that,
according to the instruction manual, Âwhen the battery does not have enough
charge to allow four (4) additional shocks, the device will signal a ÂReplace
Battery warning.Â[25]
Â According to Laerdal records, the AED gave a Âlow battery warningÂ each time
it failed to administer a shock Âand then powered down because of a low
battery, notated on the printout as ÂBAT.FAIL.ÂÂÂ  The instruction manual
explains that ÂBAT.FAILÂ indicates that the AED has shut down because of a low
battery.Â  The Laerdal incident report does not indicate that the ÂREPLACE
BATTERYÂ warning was given on the occasion in question.

Â Â Â Â Â Â Â Â Â Â Â  Dr. Reese opines that these
failures of the AED to perform in accordance with the instruction manual
constitute ÂmalfunctionsÂ as defined by 21 C.F.R. Â§ 803.3.[26]

Â Â Â Â Â Â Â Â Â Â Â  Viewing the evidence in the
light most favorable to the Schronks and indulging every reasonable inference and
resolving any doubts in their favor, we hold that the Schronks produced some
evidence Âraising an issue of material factÂ on the question of whether the AED
malfunctioned.

Â Â Â Â Â Â Â Â Â Â Â  With regard to the SchronksÂ
ÂmisbrandingÂ claims, they first complain that the AED battery label is
misleading because it is labeled with a Ârecommended replacementÂ date rather
than an Âexpiration date.ÂÂ  According to the deposition testimony of Laerdal
employee Linda Riedeburg, the pertinent portion of the battery label has a box
with the printed notation ÂRecommended ReplacementÂ beside it.Â  Riedeburg
examined an enlarged photograph of the battery label and testified that the box
beside the Ârecommended replacementÂ notation was blank, that is, it did not
provide a recommended replacement date.

Â Â Â Â Â Â Â Â Â Â Â  Dr. Reese opined that the
use of the term Ârecommended replacementÂ or Ârecommend replacementÂ instead of
Âexpiration dateÂ is misleading.Â  According to Dr. Reese:

The use of these terms is potentially
hazardous and even life threatening because in order to assure that the AEDÂs
are capable of functioning in response to their design objective intent, these
batteries MUST be changed no later than upon an identified ÂExpiration
DateÂ of no more than two (2) years.Â  The terms ÂRecommended ReplacementÂ or
ÂRecommend ReplacementÂ are clearly subjective, open-ended and not interpreted
as a mandatory requirement by Laerdal, which in reality it is.

Â 

Â Â Â Â Â Â Â Â Â Â Â  The instruction manual
provides, ÂReplace batteries every two years.Â  Check date codes on a regular
basis.ÂÂ  However, Battalion Chief Tom Foster testified in his deposition that,
when he contacted Laerdal about ordering new batteries, a Laerdal
representative informed him that the AED batteries had Âa seven-year shelf
life.ÂÂ  Foster understood this to mean that the Â[b]atteries were good for
seven years.Â

Â Â Â Â Â Â Â Â Â Â Â  A medical device is
ÂmisbrandedÂ if Âits labeling is false or misleading in any particular.ÂÂ  21
U.S.C.S. Â§ 352(a).

Â Â Â Â Â Â Â Â Â Â Â  If an article is alleged to
be misbranded because the labeling or advertising is misleading, then in
determining whether the labeling or advertising is misleading there shall be
taken into account (among other things) not only representations made or
suggested by statement, word, design, device, or any combination thereof, but
also the extent to which the labeling or advertising fails to reveal facts
material in the light of such representations or material with respect to consequences
which may result from the use of the articles to which the labeling or
advertising relates under the conditions of use prescribed in the labeling or
advertising thereof or under such conditions of use as are customary or usual.

Â 

Id. Â§ 321(n) (LexisNexis 2006).Â  Thus, LaerdalÂs
representations are relevant to this inquiry.

Â Â Â Â Â Â Â Â Â Â Â  The [FDCA] is plain and
direct. Â Its comprehensive terms condemn every statement, design and device
which Â may mislead or deceive. Â Deception may result from the use of
statements not technically false or which may be literally true. Â The aim of
the statute is to prevent that resulting from indirection and ambiguity, as
well as from statements which are false. Â It is not difficult to choose
statements, designs and devices which will not deceive. Â Those which are
ambiguous and liable to mislead should be read favorably to the accomplishment
of the purpose of the act.

Â 

United States v. Ninety-Five Barrels (More or Less) Alleged Apple Cider
Vinegar, 265 U.S. 438,
442-43, 44 S. Ct. 529, 531, 68 L. Ed. 1094 (1924); accord United States v.
An Article . . . ACU-DOT, 483 F. Supp. 1311, 1315 (N.D. Ohio 1980); Edward
M. Basile et al., Medical Device Labeling and Advertising: An Overview,
54 Food & Drug L.J. 519, 521
(1999).

Â Â Â Â Â Â Â Â Â Â Â  Viewing the evidence in the
light most favorable to the Schronks and indulging every reasonable inference and
resolving any doubts in their favor, we hold that genuine issues of material
fact remain on the question of whether the AED battery is misbranded because of
the manner in which the replacement date is indicated on the label.Â  Cf. United
States v. Jamieson-McKames Pharms., Inc., 651 F.2d 532, 545-46 (8th Cir.
1981) (drugs misbranded because labels depicted false expiration date).

Â Â Â Â Â Â Â Â Â Â Â  The Schronks also contend
that the AED battery is misbranded because its labeling is not sufficiently
prominent.Â  A drug or medical device does not satisfy the prominence
requirements of the FDCA if Âthe information is presented in type that is too
small, fades into the background, is obscured, or crowded with other graphic
matter.ÂÂ  Basile, supra, 54 Food
& Drug L.J. at 522-23 (citing 21 C.F.R. Â§ 801.15(a)(6)).Â  A drug or
medical device also fails to satisfy these requirements if required information
does not Âappear on the part or panel of the label which is presented or
displayed under customary conditions of purchase.ÂÂ  21 C.F.R. Â§ 801.15(a)(1).

Â Â Â Â Â Â Â Â Â Â Â  Laerdal employee Riedeburg
testified that the box beside the Ârecommended replacementÂ notation was blank,
that is, it did not provide a recommended replacement date.Â  Viewing the
evidence in the light most favorable to the Schronks and indulging every
reasonable inference and resolving any doubts in their favor, we hold that
genuine issues of material fact remain on the question of whether the AED
battery is misbranded because it does not depict an expiration date.Â  See
United States v. Dino, 919 F.2d 72, 75 (8th Cir. 1990) (sample drugs
misbranded because they were not marked with lot numbers or expiration dates).

Â Â Â Â Â Â Â Â Â Â Â  Thus, genuine issues of
material fact remain on the questions of whether the AED or its battery was
defective and whether the AED or its battery was Âdefectively manufactured,
designed, supplied, sold or marketed to the City.Â

Causation

Â Â Â Â Â Â Â Â Â Â Â  Laerdal alleged in its
summary-judgment motion that it is entitled to judgment on the SchronksÂ
negligence claim because there is no evidence any act or failure to act on
LaerdalÂs part was a proximate cause of HelenÂs injuries.

Â Â Â Â Â Â Â Â Â Â Â  The Schronks allege, among
other things, that Laerdal was negligent because it: (1) failed to properly
train employees of the City on maintenance, testing and upkeep of the AED
and/or its batteries; (2) advised Battalion Chief Foster that the batteries
were good for seven years; and (3) failed to label the batteries with expiration
dates.Â  Battalion Chief Foster testified that the AED batteries were not
replaced every two years because Laerdal advised that they were good for seven
years.

Â Â Â Â Â Â Â Â Â Â Â  Dr. Reese opined that
LaerdalÂs negligence resulted in the AED not Âbeing fully functionalÂ and
Âdenied life saving therapyÂ to Helen.Â  Dr. Desser concluded that, in
reasonable medical probability, there is a better than 51% chance that Helen
would have been successfully defibrillated and would have survived her cardiac
arrest if the AED had functioned properly.

Â Â Â Â Â Â Â Â Â Â Â  Viewing the evidence in the
light most favorable to the Schronks and indulging every reasonable inference and
resolving any doubts in their favor, they produced some evidence Âraising an
issue of material factÂ on the question of whether LaerdalÂs negligence was a
proximate cause of HelenÂs death.

Â Â Â Â Â Â Â Â Â Â Â  We sustain the SchronksÂ
first point.

Conclusion

The trial court erred by granting the
CityÂs plea to the jurisdiction and by granting LaerdalÂs summary-judgment
motion.Â  Accordingly, we reverse the judgment and remand this cause to the
trial court for further proceedings consistent with this opinion.

Â 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray dissenting in part 

and
concurring in part with note)*

Reversed and
remanded

Opinion
delivered and filed July 22, 2009

[CV06]

Â 

*Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray dissents in part and concurs in part with the judgment of the
Court.Â  A separate opinion will not issue.Â  He notes, however, that the claims
against the City of Burleson were properly dismissed.Â  The claim is based
entirely on the fact that the AED the fire department first attempted to use
did not work properly.Â  As such, it is either a suit for the failure to use a
working AED device--in essence non-use of tangible personal property which is
not actionable.Â  In the alternative, it was for the use of an AED that did not
work.Â  But it is undisputed that the AED device did not cause her death.Â  The
Court gets around this problem by finding the Fire Department violated the law
in an emergency by failing to properly check or test the AED batteries.Â  But
that negligence, if any, was not part of the emergency, and the waiver of
immunity for such activity is not implicated--if anything, it was simple
negligence of a governmental employee for which sovereign immunity is not
waived.Â  For these and other reasons, I join no part of the CourtÂs opinion and
respectfully dissent to that portion of the judgment which reverses the
judgment in favor of the City of Burleson.Â  And though I join no part or
portion of the opinion, I concur in the reversal of the judgment to the extent
it reverses and remands the judgment in favor of Laerdal for further
proceedings.)









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  According to our
research, the Supreme Court has neither embraced nor rejected this test.





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  ÂSovereign immunity
protects the State, state agencies, and their officers, while governmental
immunity protects subdivisions of the State, including municipalities and
school districts.ÂÂ  Mission Consol. Indep. Sch. Dist. v. Garcia,
253 S.W.3d 653, 655 n.2 (Tex. 2008).

Â 





[3]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The Schronks also
complain about the CityÂs incorporating by reference in this third part of its
defensive pleading Âthe reasons set forth in the foregoing paragraphs numbers
2.01, 2.02, 20.3 [sic], 2.04 and 2.05Â (which are paragraphs in the
Âimmunity-from-liabilityÂ section of the pleading) as grounds for its claim of
immunity from suit.Â  We are unpersuaded.Â  This pleading method merely reflects
the close relationship in the Tort Claims Act between immunity from suit and
immunity from liability.Â  See Tex.
Civ. Prac. & Rem. Code Ann. Â§ 101.025(a) (Vernon 2005) (ÂSovereign
immunity to suit is waived and abolished to the extent of liability created by
this chapter.Â); Tex. DepÂt of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 224 (Tex. 2004) (ÂThe Tort Claims Act creates a unique statutory
scheme in which the two immunities are co-extensiveÂ).





[4]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Rule 166a(c)
provides in pertinent part that a summary-judgment ruling must be based on:

Â 

(i) the deposition transcripts,
interrogatory answers, and other discovery responses referenced or set forth in
the motion or response, and (ii) the pleadings, admissions, affidavits,
stipulations of the parties, and authenticated or certified public records, if
any, on file at the time of the hearing, or filed thereafter and before judgment
with permission of the court.

Â 

Tex. R. Civ. P. 166a(c).Â  Under the plain language of
this rule (and contrary to the Tyler CourtÂs decision in Burford),
documentary evidence may be considered as part of the summary-judgment record
if it is Âon file at the time of the hearing, or filed thereafter and before
judgment with permission of the court.ÂÂ  Enter. Leasing Co. of Houston v.
Barrios, 156 S.W.3d 547, 549 (Tex. 2004) (per curiam) (quoting Tex. R. Civ. P. 166a(c)).Â  Of course,
it is preferable that a summary-judgment motion or response make specific
reference to other evidence on file but not attached to the motion or response.





[5]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The CityÂs claim of
immunity under section 101.062 of the Tort Claims Act relates to the SchronksÂ
allegations that the City violated sections 773.042 and 779.003 of the Health
and Safety Code.





[6]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Because the
admissibility of the SchronksÂ evidence impacts our review of the merits of the
CityÂs plea to the jurisdiction, we first address their fourth point.Â  See
Torres v. GSC Enters., Inc., 242 S.W.3d 553, 557 (Tex. App.ÂEl Paso 2007,
no pet.); Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist., 127 S.W.3d 235,
240 (Tex. App.ÂWaco 2003, no pet.).





[7]
Â Â Â Â Â Â Â Â Â  Section 779.003 provides,
ÂA person or entity that owns or leases an automated external defibrillator
shall maintain and test the automated external defibrillator according to the
manufacturerÂs guidelines.ÂÂ  Tex. Health
& Safety Code Ann. Â§ 779.003 (Vernon 2003).

Â 





[8]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The City states that
most of these objections were to the form of the questions posed.Â  See Tex. R. Civ. P. 199.5(e).Â  The City
suggests that there were other objections but does not identify the nature of
the objections.





[9]
Â Â Â Â Â Â Â Â Â Â Â Â Â  This 46-page
document is entitled, ÂLaerdal HEARTSTART 911, Automated External
Defibrillator, Directions for Use.Â Â Â We refer to it hereinafter as the
Âinstruction manual.Â

Â 





[10]
Â Â Â Â Â Â Â Â Â Â Â  We have already ruled
that the CityÂs evidence did not need to be attached to its plea to the
jurisdiction to be considered by the trial court.Â  We likewise hold that the
entirety of a responding partyÂs evidence need not be quoted within the body of
a response to the plea to the jurisdiction.Â  Such evidence may be attached to
the responsive pleading or filed separately and contemporaneously thereto or Âthereafter
and before judgment with permission of the court.ÂÂ  Cf. Tex.
R. Civ. P. 166a(c).

Â 





[11]
Â Â Â Â Â Â Â Â Â Â Â  See Miranda,
133 S.W.3d at 228 (appellate court must Âtake as true all evidence favorable to
the nonmovantÂ and Âindulge every reasonable inference and resolve any doubts
in the nonmovantÂs favorÂ).





[12]
Â Â Â Â Â Â Â Â Â Â Â  These ÂLMCÂ numbers
apparently refer to LaerdalÂs pagination of the pertinent documents.Â  They are
similar to Bates stamp numbers.





[13]
Â Â Â Â Â Â Â Â Â Â Â  The City also objected
that the Schronks could not rely on Dr. DesserÂs affidavit because he had not
been timely designated as an expert witness.Â  However, the trial court did not
sustain this objection, and the City has not perfected its own appeal to
challenge this ruling.

Â 





[14]
Â Â Â Â Â Â Â Â Â Â Â  The Schronks filed a
formal designation of their experts, including Dr. Desser, on December 6.

Â 





[15]
Â Â Â Â Â Â Â Â Â Â Â  The Supreme Court has
Âlimited [Salcedo] to its facts.ÂÂ  Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 342 (Tex. 1998).Â  There is a vigorous debate among the intermediate appellate courts about the
continuing viability of Salcedo.Â  Compare Tex. Tech. Univ. Health
Sciences Ctr. v. Lucero, 234 S.W.3d 158, 168-72 (Tex. App.ÂEl Paso 2007,
pet. denied), with Anderson v. City of San Antonio, 120 S.W.3d 5, 7-9
(Tex. App.ÂSan Antonio 2003, pet. denied).Â  However, we need not wade into that
fray.Â  The statute establishes the requisite causation as Âproximate cause.ÂÂ  Tex. Civ. Prac. & Rem. Code Ann. Â§ 101.021;
City of Grapevine v. Sipes, 195 S.W.3d 689, 691-92 (Tex. 2006); Wise
RegÂl Health Sys. v. Brittain, 268 S.W.3d 799, 807 (Tex. App.ÂFort Worth 2008,
no pet.).Â  We will apply settled precedent defining the term Âproximate cause.Â





[16]
Â Â Â Â Â Â Â Â Â Â Â  The City contends that
the use of the AED was not a cause in fact of HelenÂs death.Â  The issue of
foreseeability is not before us.

Â 





[17]
Â Â Â Â Â Â Â Â Â Â Â  Although these precise
terms need not be used, the evidence must demonstrate Âto a reasonable degree
of medical certaintyÂ that the injury or death was caused by the defendantÂs
negligence.Â  Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,
271 S.W.3d 238, 247 (Tex. 2008).





[18]
Â Â Â Â Â Â Â Â Â Â Â  The Schronks allege
for the first time on appeal that the City judicially admitted causation in its
defensive pleadings by stating that LaerdalÂs negligent design, etc. of the AED
Âwas a proximate cause or the proximate cause of the incident, injuries and
death and damages at issue.ÂÂ  However, the Schronks did not rely on this
ÂadmissionÂ in the trial court as a basis for denial of the CityÂs plea to the
jurisdiction or LaerdalÂs summary-judgment motion.Â  Because they did not raise
it in the trial court, they cannot rely on it on appeal.Â  See Sherman v. Merit Office Portfolio, Ltd., 106 S.W.3d 135, 140-41 (Tex. App.ÂDallas 2003,
pet. denied); Smith v. Altman, 26 S.W.3d 705, 709 (Tex. App.ÂWaco 2000,
pet. dismÂd w.o.j.).





[19]
Â Â Â Â Â Â Â Â Â Â Â  Neither section
101.055 nor section 101.062, which we discuss hereinafter, provides an
independent waiver of immunity.Â  Rather, even if a waiver of immunity is
established under section 101.021, a governmental unit may nonetheless retain
its immunity if it meets the requisites of section 101.055 or section 101.062.Â 
See Gipson v. City of Dallas, 247 S.W.3d 465, 470-71 (Tex. App.ÂDallas
2008, pet. denied); City of El Paso v. Hernandez, 16 S.W.3d 409, 415-16
(Tex. App.ÂEl Paso 2000, pet. denied).





[20]
Â Â Â Â Â Â Â Â Â Â Â  Laerdal also filed
written objections to Dr. DesserÂs affidavit but did not call those objections
to the trial courtÂs attention at the summary-judgment hearing and did not
obtain a ruling on the objections.Â  Laerdal does not challenge the
admissibility of Dr. DesserÂs affidavit on appeal.





[21]
Â Â Â Â Â Â Â Â Â Â Â  LaerdalÂs argument and
authority on the allegedly conclusory nature of Dr. ReeseÂs affidavit is
contained in a footnote in its brief which reads as follows:Â  

Â 

Mr. ReeseÂs affidavit failed to satisfy
AppellantsÂ burden because Mr. Reese cannot establish that the AED battery, had
it been properly charged, would not have functioned appropriately.Â  His
affidavit was wholly conclusive, not based on anything remotely related to the
facts, instead based solely on his own conjecture and conclusions.Â  There is
further no evidence he inspected, evaluated or tested the device or battery in
question.Â  (C.R. V7, 1461)Â  Laerdal continues to assert these substantive
objections to this Court and argues that, as such, Mr. ReeseÂs Affidavit is not
competent summary judgment evidence.Â  Rizkallah v. Conner, 952 S.W.2d 580,
587 (Tex. App.ÂHouston [1st Dist.] 1997, no pet.).





[22]
Â Â Â Â Â Â Â Â Â Â Â  The SchronksÂ
defective product claim is based on section 402A of the Restatement (Second) of
Torts.Â  See Restatement (Second)
of Torts Â§ 402A (1965).Â  The elements for a strict product liability
claim under section 402A are: (1) a product defect; (2) that existed at the
time the product left the manufacturerÂs hands; (3) made the product
unreasonably dangerous; and (4) was a producing cause of the plaintiffÂs
injuries.Â  Parsons v. Ford Motor Co., 85 S.W.3d 323, 329 (Tex. App.ÂAustin 2002, pet. denied).





[23]
Â Â Â Â Â Â Â Â Â Â Â  A claim that a drug or
medical device is ÂmisbrandedÂ is in essence a marketing defect claim.Â  See,
e.g., Merck & Co. v. Garza, 277 S.W.3d 430, 437 (Tex. App.ÂSan Antonio
2008, pet. filed).

Â 





[24]
Â Â Â Â Â Â Â Â Â Â Â  It is undisputed that
an AED is a medical device governed by the Federal Food, Drug and Cosmetic
Act.Â  See United States v. Laerdal Mfg. Corp., 853 F. Supp. 1219, 1238
(D. Or. 1994), affÂd, 73 F.3d 852 (9th Cir. 1995).

Â 





[25]
Â Â Â Â Â Â Â Â Â Â Â  Section 4.8.2 of the
instruction manual provides in pertinent part, ÂIf three more charge-to-shock
cycles are initiated after the ÂBATTERY LOWÂ warning, a ÂREPLACE BATTERYÂ warning
will be given.ÂÂ  ÂÂREPLACE BATTERYÂ indicates that there may not be enough
capacity in the battery to deliver another shock.Â





[26]
Â Â Â Â Â Â Â Â Â Â Â  Because the Schronks
seek only to enforce federal regulations for medical devices in their suit,
their product liability claims are not preempted by the FDCA.Â  See Riegel v.
Medtronic, Inc., ___ U.S. ___, 128 S. Ct. 999, 1011, 169 L. Ed. 2d 892
(2008) (FDCA Âdoes not prevent a State from providing a damages remedy for
claims premised on a violation of FDA regulations; the state duties in such a
case Âparallel,Â rather than add to, federal requirementsÂ).